Irving Levitt Co., Inc. v. Commissioner.
Irving Levitt Co. v. Commissioner
Docket No. 708-67.
United States Tax Court
T.C. Memo 1968-115; 1968 Tax Ct. Memo LEXIS 180; 27 T.C.M. (CCH) 551; T.C.M. (RIA) 68115; June 17, 1968, Filed Daniel D. Levenson, for the petitioner. Lawrence A. Wright, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in petitioner's income tax as follows: Taxable Year Ended
Deficiency
March 30, 1962
$3,554.13
March 31, 1963
2,613.27
March 28, 1964
2,644.25
The sole question presented is whether petitioner may deduct as salaries or other compensations under section 162(a) (1), I.R.C. 1954, amounts paid to Rose Kadish and Abby Levitt during the years in question. Findings of Fact Some of the facts have been stipulated. The stipulation and exhibits *181 attached thereto are incorporated herein by this reference. Irving Levitt Co., Inc. (hereinafter sometimes referred to as petitioner, Levitt Co., or the company), was organized as a Massachusetts corporation on May 1, 1957. Petitioner filed its U.S. Corporation Income Tax Returns for the years in question with the district director of internal revenue, Boston, Massachusetts, and maintained its books and records on a fiscal year basis, employing the accrual method of accounting. Petitioner is the successor of a business carried on under the name of Kadish & Levitt, which had been started in the early 1920's by Nathan Kadish. In 1951, Nathan Kadish died and was survived by his widow, Rose Kadish (hereinafter sometimes referred to as Rose), and three daughters, Bessie Mills, Ida Levitt, and Carol Goldman. Nathan Kadish's will contained, among others, the following provisions: THREE: I hereby declare that the wholesale beef business now carried on and conducted under the firm name and style of Kadish & Levitt and also under the name of Irving Levitt at the premises numbered 35-41 North Street, Boston, Massachusetts, is owned by me and that my son-in-law Israel R. Levitt has been *182 and is now managing and in charge thereof and has advanced monies to the said business, and who, under an agreement between us has been and is now an equal partner to the profits derived from said business, and that is, receiving 50% of the net profits thereof. FOUR: I hereby give, devise and bequeath to my said beloved daughters, Bessie Mills and Ida Levitt, all my right, title and interest in and to the aforementioned business and to my share in the profits and assets therein in trust nevertheless to and for the following uses and purposes: a. I hereby direct that the Trustees operate and continue the said business as long as the said Israel R. Levitt's services shall be available to manage it. b. I hereby further direct that my said Trustees retain my said beloved son-in-law Israel R. Levitt during the term of this Trust as manager and in charge of the aforementioned business on the same terms and conditions under which he now manages the said business and to receive for his services fifty per cent (50%) of the net profits derived from the said business. c. To pay to my beloved wife, Rose Kadish, out of the remaining fifty per cent (50%) of the profits derived from said *183 business, Seventy-five ($75) Dollars per week. Payments to begin on the date of my death and to continue each and every week during her life. d. I hereby authorize and empower my Trustees to enter into any new arrangement or agreement from time to time with the said Israel R. Levitt in relation to said business, either by way of substitution for any arrangement or agreement subsisting at my death or otherwise, and from time to time to alter or vary any arrangement or agreement under which said business may be carried on, or the nature of the business, as the said Trustees may think fit. e. I express my wish that my Trustees continue to employ my son-in-law Sidney Goldman of Boston, County of Suffolk, Commonwealth of Massachusetts in the said business, and that he be paid reasonable compensation for his services. f. In case the said Trustees shall at any time be of the opinion that the said business cannot be continued to the advantage of my estate, or in case the Trustees shall be unwilling to engage therein, I authorize and empower them to sell, mortgage, lease and dispose of the same at public or private sale at such times or time and upon such terms and conditions as they *184 in their discretion may deem desirable and expediant, [sic] provided however, the said Israel R. Levitt consents to such sale in writing and in 553 the event that the said Israel R. Levitt does consent to such sale, to make, execute, acknowledge and deliver all proper writings, agreements, bills of sales, assignments, leases or transfers thereof and any other documents necessary to transfer a proper title thereto without obtaining consent of the Probate Court therefor. * * * SEVEN: Each trust hereby created shall continue for and during the natural life of my beloved wife Rose Kadish while and for so long as she remains a widow and no longer. In the event my said wife should marry again, then the said Trusts shall cease and determine and I direct that the entire Trust Property in each Trust then remaining be distributed in the following manner: - a. Fifteen per cent (15%) of the entire Trust Property in each Trust to my said wife Rose Kadish, and the balance of the said entire Trust Property in each Trust be turned over to my beloved daughters, Bessie Mills, Ida Levitt, and Carol Goldman share and share alike. * * * During the existence of the trust created by the will, *185 Rose received $75 weekly, the amount specified in the will, from the profits of the partnership. The business was run by Irving Levitt in accordance with the provisions in the will, until 1957. At that time Rose remarried and the trust was terminated. Thereupon, the business was incorporated on May 1, 1957, with the stockholders of the petitioner being Irving Levitt, Sidney Goldman, and Michael Dorfman, the son-in-law of Irving Levitt. During the taxable years involved, the issued capital stock of Levitt Co., was held as follows: Stockholder
Percent
Irving Levitt
70
Sidney Goldman
20
Michael Dorfman
10 Rose Kadish is the mother-in-law of both Sidney Goldman and Irving Levitt. At the time petitioner was incorporated, Levitt Co. owed Rose $30,000. In light of the financial needs of the company, Rose allowed this debt to remain without any interest being charged and without receiving notes as evidence of this indebtedness. As of the following dates, during the years in issue, the petitioner owed Rose the following amounts: Date
Amount
March 30, 1962
$20,473.73
March 29, 1963
20,069.85
March 28, 1964
20,069.85
(How the indebtedness *186 was reduced from $30,000 to these amounts is unexplained.) Rose's purpose in leaving the money in the business was to improve the financial position of petitioner and thereby facilitate its other borrowings. After the petitioner was organized, Rose was paid $75 a week by petitioner as "compensation." In the years in question, Rose was paid approximately $100 a week by petitioner as "compensation." Rose Kadish, during the period in question, was mentally alert. Over the years she had developed a knowledge and acquaintance with the customers of the business. She visited petitioner's office approximately once a week, except during the winter months. During these visits, she would meet with Clarence Resnick, the credit manager and comptroller of petitioner, and discuss the credit standing of petitioner's customers. On several occasions Resnick followed Rose's advice. In addition, Rose, at various times, advised the officers of the petitioner on speculative purchases of meat and was consulted by these officers about expansion and modernization of petitioner's physical plant. In addition to her weekly visits to the office, the business discussions were continued with Rose's sons-in-law *187 when they met once a week at her house. During the years in question, no payments were made by the petitioner to Bessie Levitt, the mother of Irving Levitt, the principal stockholder of petitioner. During the taxable year ended March 30, 1962, Abby Levitt (hereinafter sometimes referred to as Abby), the daughter of Irving Levitt, was employed by the petitioner in its office for 3 months at a weekly salary of $175. During her employment she worked only on a part-time basis, after college and on weekends. Respondent determined deficiencies in petitioner's income tax and attached the following explanation: * * * It is determined that the amounts paid to Rose Kadish which were deducted as compensation on your Federal income tax returns are not allowable as they are not ordinary and necessary business deductions within the meaning of the Code. Accordingly, your taxable income has been increased as follows: Taxable Year Ended
Amount Claimed andDisallowed
March 30, 1962
$5,016.02
March 31, 1963
5,025.52
March 28, 1964
5,143.28 554 The deduction of $2,275.00 claimed as compensation of Abby Levitt for the taxable year ended March 30, 1962, has been determined *188 to be excessive to the extent of $1,820.00 since only $455.00 thereof is determined to be a reasonable allowance for salary or other compensation for personal services actually rendered. * * * Ultimate Findings of Fact Petitioner unreasonably compensated Rose Kadish for the services she performed for Levitt Co. during the years in issue. The reasonable value of Rose's services is found to be $25 a week. Petitioner has failed to prove that the amounts disallowed by respondent were reasonable compensation for the services performed by Abby Levitt. Opinion The sole issue in this case is whether the amounts paid to Rose and Abby constitute reasonable compensation for their services so as to be deductible by petitioner under section 162(a)(1), I.R.C. 1954. Respondent determined deficiencies, finding that the amounts paid were not reasonable compensation. Respondent's determination is presumed to be correct, with the burden of proof on petitioner to show that the payments were made as compensation to Rose and Abby for their services, and that the amounts were reasonable. Botany Mills v. United States, 278 U.S. 282 (1929). With respect to *189 Rose, respondent's position is that the total amounts paid did not constitute compensation for services performed, but were paid due to the family relationship. Moreover, even if they were paid to compensate for her services, the amounts were not reasonable. The foundation for respondent's disallowance is that petitioner is owned 90 percent by Rose's two sons-in-law and the other 10 percent by the son-in-law of one of her sons-in-law. Thus, respondent's theory is that Rose was paid not for services performed for petitioner, but rather because she was a relative of the owners of the business, and also as a substitute for her loss of income because of the termination of the trust set up under her husband's will. In a family situation of this kind, the facts must be closely scrutinized to establish the actual extent and character of any services performed by Rose and to determine in what capacity she received these payments. The burden is on petitioner to prove that Rose was paid these amounts as an employee and that the payments were reasonable with respect to the services she rendered. Duval Motor Co., 28 T.C. 42, 53 (1957), affirmed on other grounds 264 F. 2d 548 *190 (C.A. 5, 1959). Witnesses called by petitioner testified that Rose visited the business offices approximately once a week, except during the winter months, to discuss credit problems with the comptroller of petitioner, and offer her opinion and recommendations concerning the credit standing of several customers. In addition, they testified that she at times expressed opinions about plant expansion and about speculative purchases of meat. How many hours Rose spent at the office or with her sons-in-law discussing the business and its problems is not shown by the evidence. Moreover, it is unclear from the generalized testimony of the witnesses how often they relied upon her advice, or whether it was ever actually solicited by them. Rose was not an officer of the petitioner and apparently did not have any responsibilities concerning the operation of the company. Furthermore, there is nothing in the record to indicate that she was required to be at petitioner's office on a regular basis or to perform any specific tasks. Unsatisfactory as the record is, we think there is sufficient evidence to find that Rose did in fact perform some services for which she could reasonably be compensated. *191 Her son-in-law, Irving Levitt, the treasurer of petitioner, testified that she was helpful concerning purchases of meat and the expansion of petitioner's plant. The petitioner's comptroller stated he had been assisted by Rose with problems of extending credit to several of petitioner's customers who had been known to Rose over the years. The amounts paid to Rose during the years in question were $25 per week more than she received under the will. Prior to 1957, Rose received $75 per week which had been a distribution of the profits of the business. However, when Rose remarried she was unable to continue to receive these profits under the direction of the will. The trust, which had paid her the amounts, was terminated. Thereafter, the business began to pay her $75 per week as "compensation," 555 having changed its form from a "partnership" to a corporation. Her sons-in-law continued to operate the business and it appears to us that payment of these amounts was, in part, simply a substitute for and a continuation of the prior distributions. However, for the years in question, Rose received approximately $100 a week, all of which was "compensation" for her services, according *192 to petitioner's view. We do not think this conclusion is supported by the evidence. Applying the rule in Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930), we believe that no more than $25 per week is a reasonable amount to be allocated as compensation and so deductible under section 162(a), by petitioner. With respect to Abby Levitt's compensation, we think petitioner has failed to present any evidence which could justify deduction of the full $175 a week paid to the daughter of the majority stockholder of the corporation. It was admitted that her services were performed only on a part-time basis, after school and on weekends. Accordingly, we uphold respondent's determination that $35 a week was a reasonable amount for Abby's services in light of petitioner's failure to prove otherwise. Decision will be entered under Rule 50.